Michael C. Ormsby
United States Attorney
Eastern District of Washington
K. Jill Bolton
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

NOV 02 2010

JAMES R LARSEN, CLERK
_____DEPUTY
YAKIMA, WASHINGTON

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,
        Plaintiff,
  vs.
ANITA M. GUST,
        Defendant.

10-CR-06026-RHW-2

Plea Agreement

Plaintiff, United States of America, by and through Michael C. Ormsby, United States Attorney for the Eastern District of Washington, and K. Jill Bolton, Assistant United States Attorney for the Eastern District of Washington, and Defendant ANITA M. GUST and the Defendant's counsel, Salvador Mendoza, Jr., agree to the following Plea Agreement:

1.     <u>Guilty Plea and Maximum Statutory Penalties</u>:

The Defendant, ANITA M. GUST, agrees to plead guilty to Counts 2 and 3 of the Indictment filed on March 24, 2010, charging the Defendant with Wire Fraud, in violation of 18 U.S.C. §§ 1343 and 2.

The Defendant, ANITA M. GUST, understands that the charges contained in the Indictment are Class C felony charges. The Defendant, ANITA M. GUST, also understands that the maximum statutory penalty for Wire Fraud, in violation of 18 U.S.C. §§ 1343 and 2, is not more than 20 years imprisonment; a fine not to

Plea Agreement- 1
P00903LC.JBb.wpd

exceed $250,000; a term of supervised release of not more than 3 years; restitution and a $100 special penalty assessment.

The Defendant, ANITA M. GUST, understands that a violation of a condition of supervised release carries an additional penalty of re-imprisonment for all or part of the term of supervised release without credit for time previously served on post-release supervision.

2. <u>The Court is Not a Party to the Agreement:</u>

The Court is not a party to this Plea Agreement and may accept or reject this Plea Agreement. Sentencing is a matter that is solely within the discretion of the Court. The Defendant understands that the Court is under no obligation to accept any recommendations made by the United States and/or by the Defendant; that the Court will obtain an independent report and sentencing recommendation from the U.S. Probation Office; and that the Court may, in its discretion, impose any sentence it deems appropriate up to the statutory maximums stated in this Plea Agreement.

The Defendant acknowledges that no promises of any type have been made to the Defendant with respect to the sentence the Court will impose in this matter. The Defendant understands that the Court is required to consider the applicable sentencing guideline range, but may depart upward or downward under the appropriate circumstances.

The Defendant also understands that should the sentencing judge decide not to accept any of the parties' recommendations, that decision is not a basis for withdrawing from this Plea Agreement or a basis for withdrawing this plea of guilty.

3. <u>Waiver of Constitutional Rights:</u>

The Defendant, ANITA M. GUST, understands that by entering this plea of guilty the Defendant is knowingly and voluntarily waiving certain constitutional rights, including:

Plea Agreement- 2
P00903LC.JBb.wpd

(a).  The right to a jury trial;
(b).  The right to see, hear and question the witnesses;
(c).  The right to remain silent at trial;
(d).  The right to testify at trial; and
(e).  The right to compel witnesses to testify.

While the Defendant is waiving certain constitutional rights, the Defendant understands the Defendant retains the right to be assisted through the sentencing and any direct appeal of the conviction and sentence by an attorney, who will be appointed at no cost if the Defendant cannot afford to hire an attorney. The Defendant also acknowledges that any pretrial motions currently pending before the Court are waived.

4.  **Elements of the Offense:**

The United States and the Defendant agree that in order to convict the Defendant of Wire Fraud, in violation of 18 U.S.C. §§ 1343 and 2, the United States would have to prove beyond a reasonable doubt the following elements:

(a).  First, on or about September 1, 2000 and continuing until on or about September 30, 2005, in the Eastern District of Washington, the Defendant, ANITA M. GUST, devised and participated in a scheme to defraud; and

(b).  Second, the wires were used to further the scheme.

5.  **Factual Basis and Statement of Facts:**

The United States and the Defendant stipulate and agree that the following facts are accurate; that the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for ANITA M. GUST's guilty plea. This statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts which are relevant to the guideline computation or sentencing, unless otherwise prohibited in this agreement.

Plea Agreement- 3
P00903LC.JBb.wpd

Paul Kempf worked as a Laboratory Operations Manager for two of the U.S. Department of Energy's (DOE's) Prime Contractors from approximately 2000-2005. Kempf was also a DOE government purchase card (P-Card) holder. Kempf's position permitted him to purchase supplies for the laboratory he managed. ANITA GUST was Kempf's wife or ex-wife during the time period relevant to the charges and was the registered owner of AMG Marketing. AMG Marketing was a home-based business that operated out of Kempf and GUST'S jointly owned and occupied residence. AMG Marketing functioned as an intermediary "middle man" type business that did not manufacture any products or have any inventory, but rather took purchase orders, then found the inventory to meet the orders.

From 2000-2005, Kempf used his DOE government funded P-Card to place over $487,000 in orders for "ghost" purchases for laboratory supplies from AMG Marketing. The investigation conducted by the Department of Energy (DOE) Office of Inspector General (OIG) determined that DOE never received the laboratory supplies and that instead, Kempf and GUST converted the DOE funds for their own personal use. Some examples of how Kempf and GUST spent the $487,000 include: 1) $50,000 renovating a 1966 Chevy Nova; 2) $63,000 on auto/boat related expenses; 3) $105,000 in personal checks made out to Gust; and, 4) $17,000 on home improvements.

The investigation also determined that Kempf and GUST provided altered checks and fictitious business invoices in response to a Grand Jury Subpoena that was issued to AMG Marketing for records related to the investigation.

When Kempf was interviewed by DOE-OIG Agents, he initially denied even knowing ANITA GUST. Later in the interview, Kempf admitted they were married and living together and that GUST owned and operated AMG Marketing out of their residence. Kempf, however, never admitted misusing his DOE funded P-Card. When GUST was interviewed by DOE-OIG Agents, she stated she was

Plea Agreement- 4
P00903LC.JBb.wpd

divorced from Kempf and that they didn't reside together. GUST acknowledged, however, that Kempf had made P-Card purchases from her at AMG Marketing. GUST eventually admitted Kempf resided with her and she knew he shouldn't be making any P-Card purchases through AMG Marketing.

Forensic review of bank records and other subpoenaed documents established that the wires were used to perpetrate the scheme to defraud by transferring funds electronically from Paul Kempf's government P-Card to the AMG Marketing accounts.

The Defendant asserts that the criminal activity jointly undertaken by herself and her husband, Paul Kempf, was undertaken at the direction and urging of Paul Kempf, that Paul Kempf was the leader, organizer and manager of the criminal activity and that she was a minimal participant in the criminal activity.

6. <u>Cooperation</u>:

The Defendant agrees to cooperate completely and truthfully with the United States as follows:

(a.) <u>Debriefings</u>:

The Defendant agrees to participate in full debriefings by federal and local investigative agencies about all the Defendant's knowledge of illegal conduct, at times and places to be decided by these agencies. The Defendant agrees to provide complete, accurate and truthful information to these agencies. The Defendant agrees to not falsely implicate any person or entity and agrees to not protect any person or entity through false information or omission.

It is understood that the Defendant may have an attorney present at any or all such debriefings.

(b.) <u>Testimony</u>:

The Defendant agrees to testify completely and truthfully at any subsequent hearing, grand jury proceeding, or other federal or state court proceeding involving co-defendants or any other person involved in criminal activity.

Plea Agreement- 5
P00903LC.JBb.wpd

Both the Defendant and the United States agree to request a reasonable continuance of the sentencing date in order to ensure that the Defendant testifies pursuant to this provision prior to sentencing.

(c.) <u>Documents</u>:

The Defendant agrees to voluntarily produce all documents, records, or other tangible evidence relating to matters about which the United States Attorney's Office or law enforcement agencies inquire.

(d.) <u>Recovery of Assets</u>:

The Defendant agrees to fully cooperate in the identification and recovery of assets to pay restitution and further agrees that if any proceeds are in the Defendant's possession or control, the Defendant will immediately relinquish them to the United States.

(e.) <u>Polygraph</u>:

The Defendant agrees, if requested, to submit to one or more polygraph examinations at the United States' expense, to determine the truthfulness of the Defendant's statements and answers to questions with regard to the Defendant's cooperation herein. Any disputes as to whether the Defendant provided truthful responses to any polygraph testing will be resolved by the sentencing judge.

(f.) <u>Income Tax Information</u>:

The Defendant agrees to participate in preparing a statement with the IRS, United States Attorney's Office or any other law enforcement agency setting forth the Defendant's income from wire fraud. The Defendant further agrees to report said income on the Defendant's tax return or an amended tax return.

(g.) <u>Notification</u>:

The Defendant agrees to immediately notify the United States Attorney's Office if the Defendant is contacted, interviewed, subpoenaed or requested to testify for or against any other person.

(h.) <u>Not a Substantial Assistance Agreement:</u>

The Defendant understands that this agreement to cooperate with the United States is **not** a substantial assistance agreement, pursuant to U.S.S.G. §5K1.1 or 18 U.S.C. § 3553(e); thus, the United States will not be filing any motion for a departure from the Guidelines or sentencing statute.

(i.) <u>Effect of Breach</u>:

The Defendant agrees that if the Defendant breaches this Plea Agreement, the agreement is null and void and the Defendant expressly waives the right to challenge the initiation of additional charges against the Defendant for any criminal activity and agrees that the United States may make derivative use of and may pursue any investigative leads suggested by the Defendant's statements and cooperation.

This agreement does not protect the Defendant from prosecution for perjury, obstruction of justice, or any other offense should the Defendant commit any crime during the Defendant's cooperation under this agreement.

7. <u>Waiver of Inadmissibility of Statements</u>:

The Defendant agrees to waive the inadmissibility of statements made in the course of plea discussions with the United States, pursuant to Fed. R. Crim. P. 11(f). This waiver shall apply if the Defendant withdraws this guilty plea or breaches this Plea Agreement. The Defendant acknowledges that any statements made by the Defendant to law enforcement agents in the course of plea discussions in this case would be admissible against the Defendant in the United States's case-in-chief if the Defendant were to withdraw or breach this Plea Agreement.

8. <u>The United States Agrees</u>:

(a.) <u>Dismissal(s)</u>:

At the time of sentencing, the United States agrees to move to dismiss Count 1 of the Indictment, which charges the Defendant with Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. §§ 371, 1343 and 2 and Counts 4

Plea Agreement- 7
P00903LC.JBb.wpd

through 7 of the Indictment which charge the Defendant with Wire Fraud, in violation of 18 U.S.C. §§ 1343 and 2.

(b.) <u>Not to File Additional Charges</u>:

The United States Attorney's Office for the Eastern District of Washington agrees not to bring any additional charges against the Defendant based upon information in its possession at the time of this Plea Agreement and arising out of Defendant's conduct involving illegal activity charged in this Indictment, unless the Defendant breaches this Plea Agreement any time before or after sentencing.

9. <u>United States Sentencing Guideline Calculations</u>:

The Defendant understands and acknowledges that the United States Sentencing Guidelines (hereinafter "U.S.S.G.") are applicable to this case and that the Court will determine the Defendant's applicable sentencing guideline range at the time of sentencing.

(a.) <u>Base Offense Level</u>:

The United States and the Defendant agree that the base offense level for Wire Fraud is 7. <u>See</u> U.S.S.G. §2B1.1.

The United States and the Defendant agree and stipulate that $487,000.00 was the fraud loss caused and incurred in furtherance of the criminal activity jointly undertaken by the Defendant and her co-defendant/co-conspirator, Paul Kempf; this amount was within the scope of the Defendant's agreement and scheme to defraud; this amount was reasonably foreseeable to the Defendant in connection with the conspiracy; and the Defendant's relevant conduct for sentencing purposes should be calculated based upon this amount, pursuant to U.S.S.G. §1B1.3.

(b.) <u>Specific Offense Characteristics</u>:

The United States and the Defendant also agree and stipulate that the base offense is increased by an additional 14 levels because the amount of loss was more than $400,000.00. <u>See</u> U.S.S.G. 2B1.1(b)(1)(H).

Plea Agreement- 8
P00903LC.JBb.wpd

The United States and the Defendant also agree and stipulate that the base offense level should also be increased by an additional 2 levels because the Defendant attempted to obstruct or impede the investigation of her criminal activity by providing altered checks and fictitious business invoices in response to a Grand Jury Subpoena that was issued to AMG Marketing for records related to the investigation. See U.S.S.G. 3C1.1.

The United States and the Defendant also agree and stipulate that the base offense level should be decreased by 4 levels because the Defendant was a minimal participant in the criminal activity. See U.S.S.G. 3B1.2(a).

(c.) Acceptance of Responsibility:

Notwithstanding the parties agreement that the obstruction of justice enhancement applies in this case, if the Defendant pleads guilty and demonstrates a recognition and an affirmative acceptance of personal responsibility for the criminal conduct; provides complete and accurate information during the sentencing process; does not commit any obstructive conduct during the plea and sentencing process; accepts this Plea Agreement; and enters a plea of guilty no later than November 2, 2010, the United States will move for a three (3) level downward adjustment in the offense level for the Defendant's timely acceptance of responsibility, pursuant to U.S.S.G. §3E1.1(a) and (b). The parties agree that extraordinary circumstances exist in this case including, but not limited to, the Defendant's cooperation pursuant to the terms of this agreement and the importance of that cooperation in preventing future loss by fraud to the Department of Energy.

The Defendant and the United States agree that the United States may at its option and upon written notice to the Defendant, not recommend a three (3) level downward reduction for acceptance of responsibility if, prior to the imposition of sentence, the Defendant is charged or convicted of any criminal offense whatsoever or if the Defendant tests positive for any controlled substance.

Furthermore, the Defendant agrees to pay the $200 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, at or before sentencing, and shall provide a receipt from the Clerk to the United States before sentencing as proof of this payment, as a condition to this recommendation by the United States.

Therefore, the United States and the Defendant agree that the Defendant's final adjusted offense level would be 16.

(d.) <u>Criminal History</u>:

The United States and the Defendant understand that the Defendant's criminal history computation is tentative and that ultimately the Defendant's criminal history category will be determined by the Court after review of the Presentence Investigative Report. The United States and the Defendant have made no agreement and make no representations as to the criminal history category, which shall be determined after the Presentence Investigative Report is completed.

10. <u>Departures</u>:

The Defendant intends to request a variance from the applicable sentencing guidelines range. At this time, the Defendant is unable to articulate the basis for this variance request. The United States reserves its right to oppose any requested variance.

11. <u>Incarceration</u>:

(a.) <u>Length of Imprisonment</u>:

The United States agrees to recommend that the Court impose a sentence at the low end the applicable sentencing guideline range. The Defendant intends to seek a variance from the sentencing guideline range.

(b.) <u>Manner of Imprisonment</u>:

The United States agrees that it will not oppose the Defendant's request that her sentence be consecutive to that of her co-defendant, Paul Kempf, so that one of

them will remain available to care for their minor child while the other is serving his/her term of imprisonment.

12. **Criminal Fine:**

The United States and the Defendant are free to make whatever recommendation concerning the imposition of a criminal fine that they believe is appropriate.

13. **Supervised Release:**

The United States and the Defendant agree to recommend that the Court impose a 3 year term of supervised release to include the following special conditions, in addition to the standard conditions of supervised release:

(a). that the Defendant provide financial information, provide copies of Federal income tax returns and allow credit checks, at the direction of the Probation Officer;

(b). that the Defendant shall disclose all assets and liabilities to the Probation Officer and shall not transfer, sell, give away, or otherwise convey or secret any asset, without the advance approval of the Probation Officer; and

(c). that the Defendant be prohibited from incurring any new debt, opening new lines of credit, or enter any financial contracts or obligations without the prior approval of the Probation Officer;

(d). that the Defendant participate and complete financial counseling and life skills programs at the direction of the Probation Officer;

14. **Restitution:**

The Defendant hereby stipulates and agrees to an order of restitution in the amount of $487,000, with monthly installments payments to begin as soon as the Defendant is financially capable, as determined by the United States Probation Office and this Court, jointly and severally with co-defendant Paul Kempf. The parties agree to recommend to the Court that interest be waived on this amount

Plea Agreement- 11
P00903LC.JBb.wpd

provided that the Defendant makes monthly payments according to her financial ability as determined by the United States Probation Office and this Court.

15. <u>Mandatory Special Penalty Assessment</u>:

The Defendant agrees to pay the $200 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, at or before sentencing, pursuant to 18 U.S.C. § 3013 and shall provide a receipt from the Clerk to the United States before sentencing as proof of this payment.

16. <u>Payments While Incarcerated</u>:

If the Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, the Defendant agrees to earn the money to pay toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

17. <u>Additional Violations of Law Can Void Plea Agreement</u>:

The Defendant and the United States agree that the United States may at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its recommendation for sentence if, prior to the imposition of sentence, the Defendant is charged or convicted of any criminal offense whatsoever or if the Defendant tests positive for any controlled substance.

18. <u>Limited Appeal Rights</u>:

In return for the concessions that the United States has made in this Plea Agreement, the Defendant agrees to waive the right to appeal the sentence if the Court imposes a prison term of no longer than 21 months, imposes a term of supervised release of no longer than 3 years, waives the imposition of a fine, and imposes a $200 penalty assessment. Should the Defendant successfully move to withdraw from this Plea Agreement or should the Defendant's conviction on Counts 2 and 3 of the Indictment be dismissed, set aside, vacated, or reversed, this Plea Agreement shall become null and void; the United States may move to reinstate all counts of Indictment No. 10-CR-06026-RHW-2; and the United States

Plea Agreement- 12
P00903LC.JBb.wpd

may prosecute the Defendant on all available charges involving or arising from the Conspiracy to Commit Wire Fraud and Wire Fraud charges set forth in the Indictment. Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack of the conviction or sentence, including, but not limited to, proceedings pursuant to 28 U.S.C. § 2255 (writ of habeas corpus).

19. <u>Integration Clause</u>:

The United States and the Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and the Defendant, and no other promises, agreements, or conditions exist between the United States and the Defendant concerning the resolution of the case. This Plea Agreement is binding only upon the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state or local authorities. The United States and the Defendant agree that this agreement cannot be modified except in a writing that is signed by the United States and the Defendant.

<u>Approvals and Signatures</u>

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Michael C. Ormsby
United States Attorney

_____        11/2/10
K. Jill Bolton                                                  Date
Assistant U.S. Attorney

I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreement with my attorney. I understand and voluntarily enter into this Plea Agreement. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of

my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement and no one has threatened or forced me in any way to enter into this Plea Agreement. I am agreeing to plead guilty because I am guilty.

_____        11-2-10
ANITA M. GUST                          Date
Defendant

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept the Defendant's plea of guilty.

_____        11-2-10
Salvador Mendoza, Jr.                  Date
Attorney for the Defendant

Plea Agreement- 14
P00903LC.JBb.wpd